UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARLOS JESSAMY,

                          Plaintiff,

        -against-

JASON FROATZ, TOWN OF GREENBURGH,
OFFICER JAKASAL, Shield No. 0067 and
TJX COMPANIES, INC.,

                         Defendants.[1]
------------------------------------------------------------X

**DECISION AND ORDER**

17 Civ. 6786 (PED)

**PAUL E. DAVISON, U.S.M.J.**

      In this §1983 action, *pro se* plaintiff Carlos Jessamy alleges that he was subjected to false arrest and malicious prosecution by defendants Town of Greenburgh, Greenburgh police officer Davey Jakasal, TJX Companies, Inc. ("TJX") and TJX employee Jason Froatz. This case is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. §636(c) (Dkt. #44, #57). Familiarity with the record is presumed.

      Presently before this Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. #118 (TJX), Dkt. #130 (Jakasal), Dkt. #127 and #129 (plaintiff)). For the reasons set forth below, plaintiff's motion is **DENIED** and defendants' motions are **GRANTED**.

## I. BACKGROUND

      The following facts are gathered from the parties' statements pursuant to Local Civil

---

[1] Defendant TJX Companies, Inc. was incorrectly sued as "T.J. Maxx Department Store."

Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions. Any disputes of material fact are noted.[2]

Defendant TJX owns and operates a TJ Maxx store on North Central Avenue in White Plains, New York ("the TJ Maxx store") and a Marshalls store on North Central Avenue in Hartsdale, New York ("the Marshalls store").

Foster Shaw has been employed as a police officer with the Town of Greenburgh since 1997. In 2015, he was promoted to Detective and currently holds that position. In 2013, he was assigned to the Street Crime Unit, composed of plainclothes officers who investigate ongoing criminal activity, including many shoplifting larcenies at retail stores along Central Avenue.

Defendant Davey Jakasal has been employed as a Town of Greenburgh police officer

---

[2] Certain factual allegations in the parties' 56.1 statements, whether disputed or undisputed, have been omitted from the factual recitation because they are not germane to the issues presently before the Court.

As defendants point out, plaintiff's Rule 56.1 statement and counterstatement largely ignore the requirements of Local Rule 56.1. First, numerous purported facts are "supported" with citations to evidence which is something other than what plaintiff purports it to be, or with citations to materials which do not support plaintiff's purported denials. Additionally, several of plaintiff's purported denials "improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts." Baity v. Kralik, 51 F. Supp.3d 414, 418 (S.D.N.Y. 2014). Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) (citations omitted), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant motions, Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks and citation omitted). Accordingly, I have thoroughly reviewed the entire record in order to determine whether evidentiary submissions either contradict defendants' Rule 56.1 statements or support plaintiff's factual allegations.

since 2007. In 2014, Jakasal was assigned to the Street Crime Unit.

On October 20, 2014, Shaw was conducting general surveillance in the parking lot of a Best Buy store, not far from the Marshalls store. At about 3:00 p.m., he observed a clean-shaven black male, in his early 30's and wearing a blue Yankee hat, walk across the parking lot carrying a large black plastic bag and a white plastic bag. Shaw was only a couple of car lengths away and had a clear, unimpeded view of the man's face. The man looked at Shaw, hesitated and then quickly walked to a nearby bus stop where he abandoned the bags and fled. Shaw looked inside the black garbage bag and saw merchandise with security tags attached. Employees from the Marshalls store later informed Shaw that the merchandise had been stolen. Shaw prepared an Incident Report which detailed his observations.

On February 3, 2015, there was a petit larceny at the TJ Maxx store. A second incident occurred at the same location on February 7, 2015.

On March 2, 2015, a grand larceny occurred at the Marshalls store. A few days later, the manager of the Marshalls store (Jon Hirshkind) reported the theft to the Greenburgh Police Department. Officer Jakasal went to the Marshalls store, met with Hirshkind and viewed the store's surveillance video from March 2, 2015. The video showed a black male leaving the store with men's suits he had not paid for (a "push out" larceny).[3] Hirshkind told Jakasal that the same man had been observed stealing merchandise from the store on prior occasions. Officer Jakasal began investigating the larcenies at the Marshalls store.

On March 13, 2015 a grand larceny occurred at the Marshalls store. At approximately

---

[3] In law enforcement, a "push out" larceny occurs when a person selects merchandise, quickly passes all points of purchase and exits the store without attempting to conceal the theft. This tactic is used because employees have little time to react.

-3-

10:50 a.m., Jon Hirshkind notified Greenburgh police officer Zenon that the incident involved a tan Mini-Cooper or Caravan with partial license plate MA 566. Hirshkind subsequently called Officer Jakasal and told him that, earlier that day, men's suits had been stolen by the same black male who was responsible for the March 2d theft. Hirshkind informed Jakasal that a store employee had recorded a Massachusetts license plate number from a vehicle (parked in the fire lane) which the black male entered just after he left the store with the stolen merchandise.

During the afternoon of March 13, 2015, Hirshkind notified TJX Loss Prevention Manager John Campbell via email that, earlier that morning, a black male in his 30's, wearing a dark blue jacket with white sleeves and a "P" logo on the left side, had stolen men's suits from the Marshalls store and got into a tan or gold minivan with Massachusetts license plate 566TT2.

Later that afternoon, Officer Jakasal went to the Marshalls store, met with Jon Hirshkind and viewed the store surveillance video from earlier that day which had captured a black male stealing merchandise. Officer Jakasal could not identify the black male but was able to ascertain that it was the same black male whose image appeared on the March 2d store surveillance video. Hirshkind gave Jakasal a copy of the email to John Campbell. Officer Jakasal also obtained a written statement from Hirshkind.

Detective Shaw was working with Officer Jakasal on the investigation of store thefts along Central Avenue. Shaw reviewed the Marshalls store surveillance videos from March 2d and March 13th, as well as a still photograph Jakasal had exported from the March 13th video.[4] Shaw told Jakasal that he recognized the black male as the same person he observed on October

---

[4] Although the record is unclear as to the specific date or dates on which Officer Jakasal obtained copies of the surveillance videos from the Marshalls store, the record indicates that Detective Shaw reviewed the videos (and the exported photo) prior to March 16, 2015.

20, 2014 in the Best Buy parking lot and, therefore, Shaw believed the same black male was responsible for the October 20, 2014, March 2, 2015 and March 13, 2015 thefts from the Marshalls store. Shaw also shared the following information with Jakasal: In the course of investigating the store thefts along Central Avenue, Shaw was in contact with Edward Catale from the TJX Multi-State Loss Prevention Department; Catale had developed information that a "Carlos Jessamy" was responsible for a number of thefts at the TJX and Marshalls stores; Catale believed that Carlos Jessamy used the name "Los Bro" on Facebook.

Officer Jakasal ran a search on Massachusetts license plate 566TT2, and learned the vehicle was registered to "Aaron Driscoll." Jakasal ran a Google search on the name "Carlos Jessamy" and discovered a newspaper article from November 5, 2014, which reported that "Erin" Driscoll and Carlos Jessamy had been arrested (following a traffic stop in Upper Saddle River, New Jersey) for having a loaded gun and $4,500 worth of stolen clothing in their car.

On the morning of March 16, 2015, Officer Jakasal and Detective Shaw conducted surveillance of the parking lot of the Marshalls store in separate, unmarked police cars. Around 1:00 p.m., plaintiff entered the parking lot driving a minivan and drove past Officer Jakasal. Jakasal (who was about a car length away) observed the minivan had Massachusetts license plate 566TT2. The minivan left the parking lot; Jakasal and Shaw followed as the minivan turned right onto Central Avenue. Officer Jakasal radioed a marked Greenburgh police car to stop the minivan; the marked vehicle stopped the minivan on Central Avenue. Officer Jakasal maneuvered his vehicle in front of the minivan. Jakasal opened the driver's door and removed plaintiff from the minivan. Officer Jakasal recognized the driver as the same black male he observed on the March 2d and March 13th Marshalls store surveillance videos. Plaintiff, who identified himself as "Pierre Norris," was arrested and transported to the Greenburgh Police

Department.[5]  Plaintiff was searched upon arrival; the officers recovered a photo ID belonging to "Carlos Jessamy" and matching the person in custody.  An inventory search of the minivan yielded, *inter alia*, a jacket with long white sleeves and a "P" logo on the left front.  Detective Shaw notified plaintiff that a blender and suitcase recovered from the minivan were reported stolen from a Macy's store on March 13, 2015.

Officer Jakasal and Detective Shaw asked Marshalls store manager Hirshkind to come to headquarters and provide a second written statement regarding the March 2d and March 13th thefts from the Marshalls store.  Hirshkind did so.  He also told the officers that property had been stolen from a TJ Maxx store in February 2015 and that the TJX Loss Prevention Department believed that the thefts had been committed by the same black male that the officers had in custody.  The Marshalls store and the TJ Maxx store are on the same side of Central Avenue, about one-half mile apart.  Hirshkind told the officers that the February thefts had been reported to the police department and that he would arrange for a TJX employee to contact the officers.

In the meantime, Officer Jakasal performed a computer search to locate any Incident Reports related to the February TJ Maxx thefts.  Jakasal found two Incident Reports prepared by officer Susana Castillo: one involved the theft of merchandise on February 3d; the other involved the theft of merchandise on February 7th.  In one of the Incident Reports, Officer Castillo stated, *inter alia*: on 2/7/15 she responded to the TJ Maxx store; Ann from Loss Prevention reported that, about five hours earlier, a store employee (Dorcas Levi) had observed an unknown black male (wearing a dark colored pea coat, dark jogging pants with white stripes

---

[5] Pierre Norris is the brother of Carlos Jessamy.

on the side and black sneakers) enter the men's department and walk out the front entrance with a rolling suitcase he had not paid for and get into a vehicle which drove off; Officer Castillo was unable to interview Mr. Levi because he was not on the scene; and Officer Castillo obtained a copy of the surveillance video. In the other Incident Report, Officer Castillo stated *inter alia*: on 2/7/15 she responded to the TJ Maxx store; Ann from Loss Prevention reported that, on February 3, 2015, a store employee (Darriann) had observed an unknown black male (wearing a dark sweatshirt, dark pants and a dark colored baseball cap) walk out of the store with two duffel bags and a backpack he had not paid for and get into a vehicle which drove off; Officer Castillo was unable to interview Darriann because he/she was not on the scene; and Officer Castillo obtained a copy of the surveillance video.

Jason Froatz, a TJX Loss Prevention employee, came to Greenburgh Police headquarters and was interviewed by Detective Shaw and Officer Jakasal. Mr. Froatz signed two written statements regarding the February 3d and February 7th incidents:

> On Tuesday February 3rd, 2015 at approximately 4:31 pm I observed a black male who is a known shop lifter wearing a dark colored hooded NIKE sweat shirt,[6] and a NY Yankee baseball cap enter the TJ MAXX store. The male walked into the mens department and selected three mens messenger carry bags, at which point he looked around to see if any TJ MAXX employees were watching him. I then observed the male ext the mens department and walk to the front of the store. The male then stopped and looked around again to see is [sic] he was being followed and then finally passed all points of purchase, exiting the store through the front doors. A TJ MAXX customer service employee then observed the male enter a vehicle which was waiting in the fire lane. This male has stolen from our store in the past and TJ MAXX wished to pursue the matter and press charges if he is apprehended.

\* \* \*

---

[6] Officer Jakasal typed NIKE in capital letters because Jason Froatz told him that the logo "NIKE" was in capital letters on the front of the hooded sweat shirt.

> On Saturday February 7th, 2015 at approximately 1:44 pm I observed a black male who is a known shop lifter wearing a dark colored pea coat, dark jogging pants with white stripes and black sneakers enter the TJ MAXX store. The male walked into the luggage department and selected one piece of Samsonite Carrier luggage. I then observed the male exit the luggage department, wheeling said piece at his side as he walked to the front of the store. The male then passed all the points of purchase wheeling the luggage piece and exited the store through the front doors. This is the second time this same male has stolen from out store similar to the incident on February 3rd, 2015. TJ MAXX wishes to pursue the matter and press charges if he is apprehended.

Mr. Froatz's statements were based upon his review of the February 3d and February 7th TJ Maxx store surveillance videos, via playback on the store's video system.

Later that night, Detective Shaw and Officer Jakasal reviewed the Facebook page of "Los Bro" (suspected to be the social media name used by Carlos Jessamy). The Facebook page contained numerous photos of plaintiff spanning several years. Officer Jakasal recognized plaintiff as the black male he presently had in custody and who also appeared on the March 2d and March 13th Marshalls store surveillance videos. Officer Jakasal noted several specific photos: (1) a photo of plaintiff posted on February 4, 2015, in which he is wearing dark jogging pants with white stripe down the side; (2) a photo of plaintiff posted on February 4, 2015, in which he is wearing a dark NY Yankee baseball cap; (3) a photo of plaintiff posted on February 4, 2015, in which he is wearing a colored hooded NIKE sweat shirt; (4) a photo of plaintiff posted on February 4, 2015, in which he is sporting a goatee; (5) two photos of plaintiff (one posted March 9, 2015 and the other posted March 13, 2015), in which he is wearing a button down jacket with long white sleeves and a large "P" logo on the left breast portion; and (6) a photo of plaintiff posted March 13, 2015, in which he is clean shaven.

Officer Jakasal and Detective Shaw determined that plaintiff was a "serial shoplifter." Officer Jakasal initiated accusatory instruments charging plaintiff in connection with all four

thefts at the TJ Maxx and Marshalls stores (February 3, 2015 and February 7, 2015 (TJ Maxx); March 2, 2015 and March 13, 2015 (Marshalls)). Detective Shaw prepared accusatory instruments charging plaintiff with criminal possession of stolen property, false impersonation, unlawful possession of marijuana and aggravated unlicensed operation of a motor vehicle arising from the March 16th traffic stop. On March 17, 2015, plaintiff was arraigned on all of the charges initiated by Detective Shaw and Officer Jakasal. On March 23, 2015, plaintiff was released on bail. He failed to appear at his next scheduled court appearance (March 31, 2015); he was notified by warrant letter that he was required to appear on April 10, 2015. Plaintiff failed to appear on April 10th; he was notified by warrant letter that he was required to appear on April 17, 2015. Plaintiff appeared in Greenburgh Town Court on April 17, 2015, at which time the Westchester County District Attorney's Office filed an accusatory instrument (signed by Detective Shaw) alleging criminal possession of stolen property on October 20, 2014. On June 12, 2015, plaintiff appeared in Greenburgh Town Court; the case was adjourned to July 14, 2015. Plaintiff failed to appear on July 14th and the case was adjourned to September 22, 2015. A bench warrant issued on September 22, 2015 after plaintiff again failed to appear.

On October 30, 2015, plaintiff was arrested in the Town of Cortland for stealing over $3,000.00 worth of merchandise from a Kohl's store. He was arraigned a few days later; bail was set at $50,000. Plaintiff could not make bail and was held at the Westchester County Jail.

On November 10, 2015, plaintiff appeared in Greenburgh Town Court on an Order to Produce. The case was adjourned to November 24, 2015. Plaintiff appeared on numerous occasions in Greenburgh Town Court through April 17, 2017. Throughout that time, he was incarcerated on other criminal charges.

On or about January 21, 2016, a Westchester County Grand Jury indicted plaintiff on

charges arising out of his arrest on October 30, 2015 in the Town of Cortland. On or about February 4, 2016, a Westchester County Grand Jury indicted plaintiff on charges arising from various incidents, including the March 2d and March 13th thefts at the Marshalls store. Accordingly, the only criminal charges remaining in the Town of Greenburgh against plaintiff were those stemming from the February 3d and February 7th thefts at TJ Maxx.

In or about July 2016, a jury found plaintiff guilty on charges arising from his arrest in the Town of Cortland. On September 28, 2016, following a bench trial on the charges set forth in the remaining indictment, plaintiff was found guilty of, *inter alia*, the charges arising from the thefts at the Marshalls store (March 2d grand larceny 4th and criminal possession of stolen property 4th; March 13th petit larceny). On October 26, 2016, plaintiff was sentenced to a period of incarceration (one and one-half to three years) on the March 2d charges, and to time served on the March 13th petit larceny. These sentences were imposed consecutively to sentences on other charges in the indictment, resulting in an aggregate sentence of four and one-half to nine years in prison.[7]

On April 17, 2017, the charges pending in the Town of Greenburgh (arising from the February 3d and February 7th thefts at TJ Maxx) were dismissed in the interest of justice.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[7] The aggregate sentence was concurrent with an identical aggregate period of incarceration in conjunction with plaintiff's conviction on the charges arising from his arrest in the Town of Cortland.

P. 56(a). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248. In determining whether the moving party has met its burden of proving that there are no genuine disputes of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (alteration in original) (quotation and citation omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996). On the other hand, summary judgment must be denied if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See Anderson, 477 U.S. at 250.

Finally, mindful that plaintiff is proceeding *pro se*, this Court construes his submissions "liberally" and interprets them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal

quotation marks omitted).

### III. DISCUSSION

A. False Arrest

Plaintiff alleges that Officer Jakasal falsely arrested him on March 16, 2015, in violation of §1983 and New York law. "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (quotation marks and citation omitted). To succeed on his claims, plaintiff must establish: "(1) [Officer Jakasal] confined the plaintiff; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged." Brooks v. Whiteford, 384 F. Supp. 3d 365, 371 (W.D.N.Y. 2019).

"Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012), *as amended* (Dec. 4, 2012) (quotation marks and citation omitted). Moreover, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (emphasis in original). Finally, "[a] conviction on any charge for which plaintiff was arrested is conclusive evidence of probable cause to arrest." Williams v. Goodfriend, 347 F. Supp. 3d 169, 175 (W.D.N.Y. 2018).

Here, because plaintiff was convicted of charges which arose from his arrest on March 16, 2015, his false arrest claims are barred as a matter of law. Accordingly, defendant Jakasal is entitled to summary judgment on the false arrest claims.

B. Malicious Prosecution: Officer Jakasal

Plaintiff argues that Officer Jakasal's initiation of criminal proceedings stemming from the thefts at TJ Maxx (on February 3d and February 7th) and the Marshalls store (on March 2d and March 13th) constitute malicious prosecution under § 1983 and New York law.

"A claim for malicious prosecution under Section 1983 is substantially the same as a claim for malicious prosecution under New York law." Almonte v. Rodriguez, No. 15 Civ. 9762, 2017 WL 4011461, at *8 (S.D.N.Y. Sept. 11, 2017) (internal quotation marks omitted). To prevail on a state law malicious prosecution claim, a plaintiff must demonstrate "(1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, and (4) institution of the proceedings with actual malice." Swartz v. Insogna, 704 F.3d 105, 111-12 (2d Cir. 2013). To prevail on his § 1983 malicious prosecution claim, Gathers must establish the elements of a malicious prosecution claim under state law and must also demonstrate a post-arraignment deprivation of liberty sufficient to implicate his Fourth Amendment rights. See id. at 112.

*1. Thefts at the Marshalls store*

On September 28, 2016, plaintiff was convicted of the thefts at the Marshalls store (March 2d grand larceny 4th and criminal possession of stolen property 4th; March 13th petit larceny). Obviously, this outcome does not constitute a favorable termination. Accordingly, plaintiff's malicious prosecution claims against Officer Jakasal may not be grounded upon charges arising from the thefts at the Marshalls store.

*2. Thefts at TJ Maxx*

Officer Jakasal argues that he had probable cause to initiate criminal proceedings against plaintiff in conjunction with the TJ Maxx thefts. "The existence of probable cause is a complete

-13-

defense to a claim of malicious prosecution in New York." Manganiello v. City of New York, 612 F.3d 149, 161-62 (2d Cir. 2010) (quotation marks and citation omitted). Unlike false arrest claims, however, "the defendant must have possessed probable cause as to each offense charged." Berry v. Marchinkowski, 137 F. Supp.3d 495, 536 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). Further, "the probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013). "In other words, it is probable cause to believe that the plaintiff[ ]'could be successfully prosecuted.'" Shabazz v. Kailer, 201 F. Supp.3d 386, 393 (S.D.N.Y. 2016) (quoting Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999)). "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Stansbury, 721 F.3d at 95 (citing Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003)).

Here, at the time Officer Jakasal initiated criminal proceedings against plaintiff accusing him of the TJ Maxx thefts, Officer Jakasal knew the following: (1) TJX Multi-State Loss Prevention Department employee Edward Catale had developed information that a "Carlos Jessamy" was responsible for a number of thefts at TJ Maxx and Marshalls stores; (2) Catale believed Carlos Jessamy maintained a Facebook page under the name "Los Bro"; (3) following plaintiff's arrest on March 16, 2015, Marshalls store manager Hirshkind told Jakasal and Shaw (a) that items had been stolen from the TJ Maxx store in February 2015 and (b) that TJX Loss Prevention believed the TJ Maxx thefts had been committed by the black male Jakasal had in custody; (4) Jakasal reviewed Officer Castillo's incident reports documenting the TJ Maxx thefts; (5) TJ Maxx loss prevention employee Jason Froatz gave two written statements based

upon his review of the February 3d and February 7th TJ Maxx store surveillance videos; (6) the "Los Bro" Facebook page contained numerous photos of plaintiff spanning several years; (7) Jakasal recognized plaintiff from the Facebook photos as the black male in custody and who also appeared in the March 2d and March 13th Marshalls store surveillance videos; (8) Facebook photos posted around the time of the TJ Maxx thefts depicted plaintiff wearing clothing described in Officer Castillo's incident reports and in Jason Froatz's statements; (9) the TJ Maxx and Marshalls stores are in close proximity; and (10) the thefts at TJ Maxx and Marshalls were perpetrated using the same "push-out" method.[8]  Based upon these facts and circumstances, Officer Jakasal had probable cause to believe plaintiff was guilty of petit larceny at TJ Maxx on February 3, 2015 and February 7, 2015. Accordingly, Officer Jakasal is entitled to summary judgment on plaintiff's malicious prosecution claims grounded upon the charges arising from the TJ Maxx thefts.[9]

C. Malicious Prosecution: Jason Froatz

Plaintiff seeks to hold Jason Froatz and TJX liable for malicious prosecution under New York law, on the ground that Jason Froatz fabricated statements which induced Officer Jakasal to charge plaintiff with the TJ Maxx thefts. Under New York law:

"A civilian complainant, by merely seeking police assistance or furnishing

---

[8] Defendant Jakasal also asserts that plaintiff was depicted on the TJ Maxx surveillance videos; plaintiff argues that the videos were blurry. Additionally, plaintiff moves to preclude the TJ Maxx surveillance videos on the ground that he never received a copy of them in the format in which they were reviewed by Jason Froatz (using the store playback system). Dkt. #143. Given these disputes, I have not considered the TJ Maxx surveillance videos in determining the instant motions.

[9] Plaintiff's § 1983 malicious prosecution claim grounded upon the charges arising from the TJ Maxx thefts also fails as a matter of law because plaintiff has not demonstrated any post-arraignment deprivation of liberty resulting solely from the TJ Maxx charges.

> information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution." Mesiti v. Wegman, 307 A.D.2d 339, 763 N.Y.S.2d 67, 69 (App. Div. 2003) (internal quotation marks and citations omitted). Thus, "even if a civilian complainant is ultimately incorrect in his belief as to whether a person is committing a crime, he need only have had a reasonable basis for this belief in order to have the probable cause necessary to defeat a malicious prosecution or false arrest claim." TADCO Const. Corp. v. Dormitory Auth. of State of New York, 700 F. Supp.2d 253, 275 (E.D.N.Y.2010); see also Pacicca v. Stead, 456 F. App'x 9, 12 (2d Cir. 2011).

Biswas v. City of New York, 973 F. Supp.2d 504, 519 (S.D.N.Y. 2013). Similarly, "[w]here a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution." Chimurenga v. City of New York, 45 F. Supp.2d 337, 343 (S.D.N.Y. 1999).

Here, plaintiff asserts that Froatz signed statements in which he averred that he observed the February 3d and February 7th thefts even though he did not personally witness either incident. However, Froatz had a reasonable basis for his statements: they were based upon his review of the February 3d and February 7th TJ Maxx store surveillance videos, via playback on the store's video system. In other words, Froatz "observed" the thefts, even though he did not witness them in person as they occurred. Defendants Froatz and TJX correctly argue that plaintiff proffers no evidence from which a reasonable jury could infer that Froatz did anything other than furnish information to Officer Jakasal, who was then free to exercise his own judgment as to whether to charge plaintiff with the TJ Maxx thefts. Accordingly, defendants Froatz and TJX are entitled to summary judgment on plaintiff's malicious prosecution claims.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendants' motions for summary judgment are **GRANTED**.

The Clerk of the Court is respectfully directed to terminate the pending motions (Dkt. #118, #130, #143), to enter judgment in favor of all defendants and to close this case.

Dated: January 8, 2021
       White Plains, New York

**SO ORDERED**

_____
PAUL E. DAVISON, U.S.M.J.